JOHNSON v. VIRGINIA–CAROLINA LUMBER CO.

SMITH v. SAME.

(Circuit Court of Appeals, Fourth Circuit. July 17, 1908.)

Nos. 806, 807.

**1. CONTRACTS—VALIDITY—OPTION.**
An option, to be enforceable, must be under seal or be supported by a valuable consideration.

**2. SAME—ACTION—FAILURE TO PERFORM.**
Defendant entered into a contract by which it gave the right for 60 days to plaintiff to sell certain property owned by defendant at not less than a stated price, plaintiff to have all over such price that he could obtain; defendant agreeing to quote such price to all purchasers as he should name. Plaintiff transferred the option, and the transferees attempted to make a sale until long after the time limited had expired, and secured a man to look at the property; but he refused to buy at the price named by them, and they so notified defendant, which thereafter sold to him at a smaller price than that named in the option. *Held*, that plaintiff had no right of action to recover on a quantum meruit for services rendered, having failed to fulfill the conditions which alone entitled him to payment.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 11, Contracts, §§ 1207–1215.]

In Error to the Circuit Court of the United States for the Eastern District of Virginia, at Norfolk.

Edward R. Baird, Jr., for plaintiffs in error.

R. T. Thorp and Jno. N. Sebrell, for defendants in error.

Before PRITCHARD, Circuit Judge, and BOYD and DAYTON, District Judges.

DAYTON, District Judge. These two cases grew out of the same transaction. By consent of counsel the second was determined upon the testimony adduced in the first, and they may very properly be disposed of together here.

On January 10, 1906, T. H. Barrett, L. W. Thorpe, V. D. Thorpe, G. P. Vick, and J. G. Majette were associated together as partners under the firm name of the Virginia-Carolina Lumber Company, and as such were the owners of a lumber plant and certain timber rights, situate in Nash and Franklin counties, N. C. On that day A. R. Smith went to Mr. Barrett, the president of the company, and informed him that he believed he could effect a sale of the property through G. Fred Johnson. Thereupon two conditional contracts or options were executed by Barrett, as president, on behalf of the company; the one granting to Johnson, or his assigns, "for a period of 60 consecutive days (said 60 days to commence at the time we consent to let you, or your assigns, commence to examine the property hereinafter mentioned) the privilege to, at any price not less than $145,000," sell the said plant and timber holdings. This option to sell then provides for the terms of payment, if sale be made, and for the sale of the logs and lumber on the yards in such event, and then stipulates:

"We hereby agree to quote any price you may name (and no price except that which you name) for the aforesaid property to any prospective purchaser

you may bring us, provided that price is not less than $145,000, and we further agree that we will not sell to him, directly or indirectly, at any time, the aforesaid property without your consent."

The further provision is then made that Johnson was to have all over $145,000 for which he might sell the property, to be added by him in the sale to the cash payment required. The second contract was with Smith, and simply provided that, if a sale of the property was made by Johnson under the conditions of the writing just referred to, the company would pay him (Smith) out of the cash payment $5,000.

On March 24, 1906, Johnson by writing gave to the Mason-Miranda Company of Norfolk, Va., the privilege of selling the property upon conditions substantially the same as those contained in his option to sell from the lumber company, limiting, however, such privilege to April 15, 1906, unless the Mason-Miranda Company should have a prospective purchaser examining the property by that time. Johnson notified Barrett, president of the lumber company, that the Mason-Miranda people were the ones through whom he hoped to sell the property. On April 7th following the Mason-Miranda Company gave to Frank J. Saxe, a New York broker, an option substantially in the terms of theirs from Johnson, and Saxe secured Tremaine to make an examination of the property with a view to purchasing it. This examination by Tremaine commenced on April 12, 1906, as Saxe by telegram notified the Mason-Miranda Company, and it was completed before May 7, 1906; for on that day Saxe notified the Mason-Miranda Company that Tremaine absolutely declined to pay the $165,000 asked for the property and Saxe surrendered his option. On May 10th, in reply to a letter from Miranda, Saxe states Tremaine refused to give more than $140,000. The Mason-Miranda Company notified Barrett, president of the lumber company, of this state of affairs. Subsequently Saxe notified Barrett that Tremaine and his parties refused absolutely to deal at any price through middlemen, and that he had sent them direct to him, to see if they could negotiate. Of this the Mason-Miranda Company was notified by Barrett. Such negotiation was had between Tremaine and Barrett that the property was sold to Montgomery for $135,000; Barrett generously allowing $4,000 of this sum to be paid to Saxe and $1,000 to the Mason-Miranda Company for their services, with which they expressed themselves satisfied.

Thereupon Johnson instituted his action of assumpsit against the defendant lumber company, claiming 10 per centum of the gross sale price, or $13,500, and Smith instituted a like action, claiming the $5,000 provided for in his contract with its president, Barrett. Upon trial the court below directed the juries in each case to find for the defendant company, and judgments were rendered for the defendant in accordance with such verdicts. To these judgments these writs of error have been taken to this court.

It seems to us clear that the mere statement of facts shows that the action of the court below was absolutely right in each case. The original so-called option by Barrett on behalf of the defendant gave to Johnson only the right or privilege to secure a purchaser and sell

to him the property at a price not less than $145,000, and he was to have for his effort only the amount above this sum that he could sell for, and this only on condition that he made a sale. It gave him no interest in the property. It did not prevent the defendant from selling at any time and at any price to any one other than to a prospective purchaser presented by Johnson, his agents or assigns. It was not under seal, was without consideration, and could not be enforced in equity. An option must be supported by a valuable consideration, unless it is under seal. Graybill v. Brugh, 89 Va. 895, 17 S. E. 558, 21 L. R. A. 133, 37 Am. St. Rep. 894; Cummins v. Beavers, 103 Va. 230, 48 S. E. 891, 106 Am. St. Rep. 881; Weaver v. Burr, 31 W. Va. 736, 8 S. E. 743, 3 L. R. A. 94; Hanly v. Watterson, 39 W. Va. 214, 19 S. E. 536. At the most it was but a permission to Johnson to sell, and could have been terminated at any time by notice. Johnson could give the Mason-Miranda Company no better right than he had. He simply turned over his right to sell to them, and they in turn did the same to Saxe. The latter made an abortive effort to sell, failed, and gave the effort up. No sale was ever effected by Johnson, or any of his agents or assigns, within either the time or the terms set forth in this license to him to sell. Nor is it contended that any such sale could have been made by him or them which was prevented from consummation by the defendant. On the contrary, it is expressly shown that the whole combination utterly and completely failed to make any such sale. It is absolutely sure that they were to have nothing unless they did sell. They expressly undertook to work for nothing unless they sold within the time and for more than $145,000. To permit them to come under such conditions and recover upon quantum meruit for work and labor done would violate every principle of contracts. Smith is in no better plight. His contract was conditional upon Johnson selling for $145,000, which Johnson did not do and could not do.

The judgments in these cases must be affirmed, with costs in each case in favor of the defendant.

Affirmed.