ERNEST A. DWORAK, APPELLEE, V. ELI SHIRE, APPELLANT.

FILED MARCH 23, 1934. No. 28881.

*Beghtol, Foe & Rankin,* for appellant.

*John J. Wilson, C. J. Campbell* and *Hotz & Hotz, contra.*

Heard before GOSS, C. J., ROSE, GOOD, EBERLY, DAY and PAINE, JJ., and LANDIS, District Judge.

GOSS, C. J.

This action was for $1,000, for professional services as an accountant. From a judgment of $750 principal and $154.73 interest against him, defendant appeals.

The petition alleged that about December 1, 1929, defendant orally requested plaintiff, an income tax consultant and certified public accountant, to perform certain services to reduce defendant's income tax for 1927, amounting to $31,794.81, and orally agreed to pay plaintiff what the services were reasonably worth. The petition recited the services, the procuring of an offer of reduction to approximately $6,000, alleged the reasonable worth of the services as $1,000 and prayed judgment for that sum with interest from March 1, 1930.

Defendant answered that plaintiff was employed on condition that plaintiff was to represent him in his income tax matters until the completion thereof and he was to pay plaintiff a reasonable sum for the services only if no income tax was assessed against defendant; that plaintiff represented himself to be a person of good character, admitted to practice before the treasury department, whereas

plaintiff had been indicted in April, 1925, in the United States district court for Nebraska for devising a scheme to obtain money by false pretenses and had on November 30, 1928, been fined $200 therefor, and further, on September 22, 1925, had been complained of before the treasury department charged with fraud, the complaint asking his disbarment from practicing in income tax matters before the department; that the disbarment was pending until April 1, 1930, at which time the department found the charges to be true and recommended his disbarment from practice, whereupon, on April 21, 1930, said order was made final; that as a result of plaintiff's method of handling defendant's matters from December, 1929, to March, 1930, defendant was compelled to employ other accountants at great expense to ascertain the true situation with respect to his income taxes.

The evidence was in conflict. From each side evidence was received supporting the material averments of the pleadings. Plaintiff testified he had done all of defendant's accounting work and had been his business adviser since 1919; defendant told him, if he could reduce the tax, to handle it for him the best way he knew how to do it; the profits sought to be taxed consisted of approximately half a million dollars arising out of the sale of three motion picture theaters in Lincoln, but the payments therefor were spread over 14 years so that the present worth was thought by plaintiff to be all that was taxable. The taxable profits were first fixed by the government at $382,000. Defendant presents the fantastic theory that none of these profits were taxable. Plaintiff spent two or three months on the work and made trips to New York and Washington. He testified that he secured an offer of a reduction of the taxable profits to $150,000, which would make the income tax amount to about $6,000, that defendant refused to accept it, that he continued for a time to see if it could be further reduced, failing which he recommended defendant to accept the compromise; that defendant refused to take his advice and said he would get some other accountant to

handle it; that was in the latter part of March, 1930, and he turned the papers over to defendant in April, 1930. Later he sued for the reasonable value of his services.

Defendant testified in substance that the oral agreement was that he should pay the expenses but that plaintiff was to receive nothing unless he entirely defeated the tax, in which event he was to get a fee of $1,000. In this he was corroborated by another witness. Plaintiff testified that defendant agreed to pay him his expenses and whatever was fair and reasonable for the work and that there was no agreement that defendant should pay him $1,000 only if he succeeded in defeating the income tax entirely. Defendant paid the expenses only.

In this state of the evidence the question of plaintiff's right to recover was a question of fact for the jury. Unless there was error in the instructions or otherwise in the trial, the judgment must be affirmed.

Much is made of plaintiff's disbarment before the treasury department. There is evidence that plaintiff had turned the papers over to defendant in April, 1930, before this occurred and that it was not because of any disbarment or prospect thereof but because defendant was consenting thereto in the belief that other accountants could procure him further relief.

The court instructed the jury that, if "defendant employed the plaintiff to defeat said tax or to get a reduction thereof" and plaintiff honestly and faithfully proceeded with the work, he would be entitled to recover from plaintiff a reasonable sum for whatever he accomplished in that regard, provided he had completed his service before his disbarment. The succeeding instruction is the same except that it provides for recovery if defendant knew of the charges against plaintiff while representing defendant and had reason to anticipate that plaintiff would ultimately be disbarred thereon and yet continued him in his services and availed himself of the fruits of his labor. There was some evidence that defendant knew that charges were pending against plaintiff to disbar him from practice in

matters of this nature and that defendant continued to use his services, and there is evidence from which it may be inferred that he used the fruits of plaintiff's work to further his quest for a still greater reduction in his income tax assessment. We are of the opinion that the two instructions are not inconsistent and were not prejudicial to the rights of defendant. Taken as a whole the instructions were apt and had no tendency to confuse the jury on the issues.

Other objections relate to the refusal of the court to give instructions requested by defendant and to alleged errors in admitting testimony. We have examined these and think it sufficient to say that the jury were fairly instructed on all necessary phases and that there was no error in refusing instructions nor was there prejudicial error in the admission of testimony.

The judgment of the district court is

AFFIRMED.